UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JOSE ESPINOZA GUTIERREZ, CATALINO CORTES,
and RENE MARTINEZ,

                Plaintiffs,

      -against-

SKYVIEW CAR WASH, INC., KEVIN H. LOU, LING
WEI ZHANG, and LINDA ZHANG CHEN a/k/a LING
HUA ZHANG,

                Defendants.
-----------------------------------------------------------------X

**ORDER**
22-CV-755-SJB

**BULSARA, United States Magistrate Judge:**

      Plaintiffs Jose Espinoza Gutierrez ("Gutierrez"), Catalino Cortes ("Cortes"), and Rene Martinez ("Martinez," and collectively, "Plaintiffs") filed this action on behalf of themselves and a putative Fair Labor Standards Act ("FLSA") collective against Skyview Car Wash, Inc. ("Skyview"), Kevin H. Lou ("Lou"), Ling Wei Zhang ("Zhang"), and Linda Zhang Chen ("Chen," and collectively, "Defendants"), alleging violations of FLSA, 29 U.S.C. §§ 201–219, and New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 160–199.[1] Plaintiffs were employed by Skyview as car washers.[2] Defendants Zhang and Chen seek summary judgment and dismissal on the grounds they were not employers under FLSA

---

[1] Compl. dated Feb. 10, 2022 ("Compl."), Dkt. No. 1; Am. Compl. dated July 7, 2022 ("Am. Compl."), Dkt. No. 18; Consent to Join Collective Action dated Sept. 19, 2022, Dkt. No. 39.

[2] Am. Compl. ¶¶ 7–8, 24, 31, 44.

and NYLL.[3]  For the reasons described below, the Court grants the motion as to Chen and denies the motion as to Zhang.

## STANDARD FOR SUMMARY JUDGMENT

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "In determining whether summary judgment is appropriate, [the Court] must resolve all ambiguities and draw all reasonable inferences against the moving party." *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" in one of two ways.  Fed. R. Civ. P. 56(c)(1).  It may cite to portions of the record "including depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials." *Id.* R. 56(c)(1)(A).  Alternatively, it may show that "the materials cited do not establish the absence or presence of a genuine

---

[3] Mot. for Partial Summ. J. dated Aug. 14, 2023, Dkt. No. 67; Defs.' Rule 56.1 Statement of Material Facts ("Defs.' 56.1 Stmt."), Dkt. No. 72; Pls.' Rule 56.1 Resp. and Statement of Material Facts ("Pls.' 56.1 Stmt."), Dkt. No. 75.

dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* R. 56(c)(1)(B); *cf. Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988).

In moving for summary judgment or answering such a motion, litigants are required by the Local Rules to provide a statement (a Rule 56.1 statement) setting forth purported undisputed facts or, if controverting any fact, responding to each assertion. *See* Loc. Civ. R. 56.1(a)–(b). In both instances, the party must support its position by citing to admissible evidence from the record. *Id.* R. 56.1(d); *see also* Fed. R. Civ. P. 56(c) (requiring reliance on admissible evidence in the record in supporting or controverting a purported material fact). "The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001), *abrogated in part on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009).

Where claims in opposing Rule 56.1 statements are "genuinely disputed," the Court will consider the evidentiary sources of the claims. *Halberg v. United Behav. Health*, 408 F. Supp. 3d 118, 146 (E.D.N.Y. 2019) (adopting report and recommendation). In evaluating the sources of claims made in dueling Rule 56.1 statements, the Court cannot—as is true for the summary judgment motion as a whole—weigh evidence or assess the credibility of witnesses. *See United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994). Furthermore, "[l]egal arguments are impermissible in any Rule 56.1 Statement and are to be disregarded." *Taveras v. HRV Mgmt., Inc.*, No. 17-CV-5211, 2020 WL 1501777, at *2 (E.D.N.Y. Mar. 24, 2020); *Lawrence v. Cont'l Cas. Co.*, No. 12-CV-412, 2013 WL 4458755, at *1 n.1 (E.D.N.Y. Aug. 16, 2013) ("Both parties have submitted Local Rule 56.1 statements and responses to each other's statements that mix

3

factual assertions with legal argument and therefore fail to meet the requirements of Local Rule 56.1. The facts . . . are taken from those assertions contained in the Local Rule 56.1 statements that comply with Local Rule 56.1[.]" (citations omitted)). The court may not grant summary judgment based on a fact in a Rule 56.1 statement—even if undisputed—not supported by admissible evidence. *E.g.*, *Giannullo v. City of New York*, 322 F.3d 139, 142–43 (2d Cir. 2003) (vacating grant of summary judgment to defendants based on facts enumerated in Rule 56.1 statement supported only by arguments in briefs rather than admissible evidence). The Court must also disregard conclusory denials that lack citations to admissible evidence. *Rodriguez v. Schneider*, No. 95-CV-4083, 1999 WL 459813, at *1 n.3 (S.D.N.Y. June 29, 1999) ("*Rule 56.1 statements are not argument.* They should contain factual assertions, with citation to the record. They should not contain conclusions[.]"), *aff'd*, 56 F. App'x 27, 29 (2d Cir. 2003).

Where the opposing party fails to specifically controvert a numbered paragraph in the Rule 56.1 statement, the statement by the moving party "will be deemed to be admitted." Loc. Civ. R. 56.1(c). The Court also does not give any consideration to hearsay, speculation, or inadmissible evidence in evaluating declarations or affidavits. *Pacenza v. IBM Corp.*, 363 F. App'x 128, 130 (2d Cir. 2010) ("[A] court is obliged not to consider inadmissible evidence at the summary judgment stage[.]"); *Crawford v. Dep't of Investigation*, No. 05-CV-5368, 2007 WL 2850512, at *2 (S.D.N.Y. Oct. 1, 2007) ("[A] non-moving party 'must set forth specific facts showing that there is a genuine issue for trial;' he or she 'may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not

4

wholly fanciful.'" (quoting *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005))), *aff'd*, 324 F. App'x 139, 143 (2d Cir. 2009).

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following facts are drawn from the pleadings, the parties' Rule 56.1 statements, and supporting affidavits.[4]

Skyview Car Wash operates as a car wash business in College Point, Queens. (Defs.' 56.1 Stmt. ¶ 1; Pls.' 56.1 Stmt. ¶ 1). It was established in 2017 by Kevin Lou, who serves as its operator. (*Id.* ¶¶ 3, 5; Defs.' 56.1 Stmt. ¶¶ 3, 5). Skyview leases its business property in College Point from CXG Realty, Inc., a real estate company in which Chen is a shareholder. (*Id.* ¶¶ 3–4; Pls.' 56.1 Stmt. ¶¶ 3–4). The individual defendants share a familial relationship: Lou's mother is Zhang a/k/a "Rubi";[5] and Chen is Lou's aunt (and Zhang's sister). (*Id.* ¶ 9; Defs.' 56.1 Stmt. ¶ 9).

Plaintiffs Jose Espinoza Gutierrez, Catalino Cortes, and Rene Martinez were employees of Skyview. (*Id.* ¶ 8; Pls.' 56.1 Stmt. ¶ 8). They all worked as car washers at Skyview: Gutierrez and Cortes worked from approximately 2017 to 2022, and Martinez worked for seven months between 2021 and 2022. (*Id.*; Defs.' 56.1 Stmt. ¶ 8; Gutierrez Dep. ("Gutierrez Dep."), attached as Ex. C to Pls.' Decl., Dkt. No. 73-3 at 13:25–14:3, 45:5–11; Cortes Dep. ("Cortes Dep."), attached as Ex. D to Pls.' Decl., Dkt. No. 73-4 at

---

[4] The parties have provided the evidentiary record in their affidavits and declarations. (*See* Decl. of Diana Seo filed Aug. 14, 2023 ("Defs.' Decl."), Dkt. No. 69; Decl. in Opp'n to Defs.' Mot. for Partial Summ. J. ("Pls.' Decl."), Dkt. No. 73).

[5] Both parties concede that Zhang is also known as "Rubi." (*See, e.g.*, Defs.' 56.1 Stmt. ¶¶ 33–36; Pls.' 56.1 Stmt. ¶¶ 33–36; Defs.' Mem. of Law in Supp. of Defs.' Mot. for Summ. J. ("Defs.' Mem."), Dkt. No. 68 at 1). In her deposition, Zhang testified that she recently changed her name to "Ruby Ling Wei Zhang." (Zhang Dep. ("Zhang Dep."), attached as Ex. A to Pls.' Decl., Dkt. No. 73-1 at 13:25–14:13).

5

20:24–21:9; Martinez Dep. ("Martinez Dep."), attached as Ex. E to Pls.' Decl., Dkt. No. 73-5 at 11:16–19). Plaintiffs were primarily responsible for vacuuming, cleaning, and drying cars, as well as cleaning carpets and helping customers with other services. (Defs.' 56.1 Stmt. ¶ 8; Pls.' 56.1 Stmt. ¶ 8).

Chen has worked full-time at CAC Optical, an eyeglasses store, in Long Island City for almost 25 years. (Decl. of Linda Zhang Chen filed Aug. 14, 2023 ("Chen Decl."), Dkt. No. 70 ¶¶ 7, 10, 12). Chen would visit the car wash occasionally: two or three times a week in 2017 and 2018, and once every few months between 2019 and 2022. (Cortes Dep. at 43:7–18, 47:20–48:6, 48:19–49:16; Martinez Dep. at 31:12–23). When she was at the car wash, she would say hello to Cortes and the other Plaintiffs, sometimes congratulating them or saying, "good job." (Defs.' 56.1 Stmt. ¶ 18; Pls.' 56.1 Stmt. ¶ 18). At the car wash, Chen would "get together and talk about the business" with Lou and Zhang, and upon arrival, go into the back office, out of sight of the workers. (Cortes Dep. at 40:4–8, 43:19–23). Plaintiffs admit to not knowing Chen very well; they had only limited interactions with her. (Defs.' 56.1 Stmt. ¶ 11; Pls.' 56.1 Stmt. ¶ 11). Gutierrez testified that Chen did not pay his wages, did not hire or fire him, and did not determine his compensation. (*Id.* ¶ 14; Defs.' 56.1 Stmt. ¶¶ 13–14, 16).[6] Cortes was not fired by Chen, (*see* Cortes Dep. at 49:10–13), but he speculates that Chen was consulted about his hiring, (*id.* at 49:17–25). Martinez similarly testified that Chen did not hire or fire him, supervise him, determine his work schedule or compensation, or pay him. (Defs.' 56.1 Stmt. ¶¶ 20–22; Pls.' 56.1 Stmt. ¶ 20; Martinez Dep. at 32:7–15).

---

[6] Where a citation only to one side's 56.1 statement is provided, the Court has concluded that the opposing party has failed to demonstrate by citation to admissible evidence an actual material fact in dispute.

Zhang is Lou's mother, and since coming to the United States, she has primarily worked as a homemaker. (Decl. of Ling Wei Zhang filed Aug. 14, 2023 ("Zhang Decl."), Dkt. No. 71 ¶ 5). When Lou started Skyview in 2017, he asked Zhang if she could come to the car wash and help with work, such as helping the car wash workers (including Plaintiffs) with drying and vacuuming cars. (Defs.' 56.1 Stmt. ¶¶ 29, 31, 36; Pls.' 56.1 Stmt. ¶¶ 29, 31, 36; *see also* Zhang Decl. ¶¶ 9–10, 13). Zhang would also help at Skyview in other ways: she sold merchandise, mopped the floors, and oversaw the store when Lou was gone. (Zhang Dep. at 8:6–25, 39:3–14, 46:18–21). Neither party disputes Zhang's presence at the car wash; however, their accounts diverge on the extent of her presence and supervisory role at Skyview. Zhang testified that she did not know any of the Plaintiffs or their work schedules or compensation. (Defs.' 56.1 Stmt. ¶ 32; Zhang Decl. ¶¶ 14–16, 19–20). Plaintiffs contend that Zhang paid employees multiple times and would tell them when to work additional hours. (*See* Gutierrez Dep. at 31:7–32:8). Cortes testified that Zhang, along with Lou, interviewed and hired him. (Cortes Dep. at 29:8–30:2). Plaintiffs explained the ways in which Zhang would supervise them, including by viewing them through cameras and by telling them how to clean the cars correctly and what additional tasks to complete. (Gutierrez Dep. at 30:17–31:6; Cortes Dep. at 53:4–13; Martinez Dep. at 29:24–30:23). Plaintiffs claim that Lou did not act as an employer alone, but instead, Zhang and Chen jointly made hiring/firing decisions and set employees' rates of pay and work schedules with Lou. (Pls.' 56.1 Stmt. ¶ 6).

Plaintiffs filed this action on February 10, 2022. (Compl.). On July 7, 2022, they filed the Amended Complaint. (Am. Compl.). They allege seven causes of action: (1) failure to pay overtime compensation under FLSA; (2) failure to pay overtime wages under NYLL; (3) failure to pay minimum wages under FLSA; (4) failure to pay

7

minimum wages under NYLL; (5) failure to pay spread of hours compensation under NYLL; (6) failure to provide wage notices under NYLL § 195(1); and (7) failure to provide wage statements under NYLL § 195(3). (*Id.* ¶¶ 55–85).

## DISCUSSION

Under FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). An individual may be jointly and severally liable to an employee under FLSA where the individual exercises "operational control" over that employee. *Irizarry v. Catsimatidis*, 722 F.3d 99, 110 (2d Cir. 2013). "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Id.* "In identifying the persons or entities who qualify as 'employers,' . . . statutory definitions sweep broadly." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 140 (2d Cir. 2008).

In making this determination, the "economic reality" of the employment relationship is the core of the inquiry. *Irizarry*, 722 F.3d at 104. That is, courts look to "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (quotations omitted); *see, e.g., Irizarry*, 722 F.3d at 110 (applying *Carter*); *Vasto v. Credico (USA) LLC*, No. 15-CV-9298, 2016 WL 4147241, at *6 (S.D.N.Y. Aug. 3, 2016) ("Generally, corporate officers and owners held to be employers under the FLSA have had some direct contact with the plaintiff employee, such as personally supervising the employee's work, including determining the employee's day-to-day work schedules or tasks, signing the

8

employee's paycheck or directly hiring the employees." (quotations omitted and collecting cases)).

"[T]he 'economic reality' test encompasses the totality of the circumstances," and no single factor is dispositive. *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).[7] New York courts interpret the definition of "employer" under NYLL coextensively with the definition under FLSA. *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 308 n.21 (S.D.N.Y. 2011).[8]

I. Defendant Chen

The Court finds that, as a matter of law, Chen was not an employer of any of the Plaintiffs, warranting summary judgment being entered in her favor.[9] Chen did not

---

[7] In *Zheng v. Liberty Apparel Co.*, the Second Circuit included the following additional factors to consider, in the context of garment workers:

(1) [W]hether [the alleged employer's] premises and equipment were used for the plaintiffs' work; (2) whether the [immediate contracting employer] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to [the alleged employer's] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the [alleged employer] or their agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for the [alleged employer].

355 F.3d 61, 72 (2d Cir. 2003). In other words, courts are "free to consider any other factors it deems relevant to its assessment of the economic realities." *Id.* at 71–72.

[8] The NYLL defines "employer" as "any person . . . employing any individual in any occupation, industry, trade, business or service," or "any individual . . . acting as employer." NYLL §§ 190(3), 651(6).

[9] Plaintiffs argue that Chen's testimony in her deposition and affidavit should not be given weight: "The Court should not give weight to [Chen's] memories she can only recall when no longer under oath, and as stated within her self-serving, carefully scripted affidavit." (Pls.' Mem. of Law in Opp'n to Defs.' Mot. for Partial Summ. J. filed

9

exercise operational control over the Plaintiffs, nor did she act as an employer under the *Carter* factors.

*First*, with respect to Gutierrez, Plaintiffs concede that Chen did not pay Gutierrez's wages, (Defs.' 56.1 Stmt. ¶ 14; Pls.' 56.1 Stmt. ¶ 14), and that Gutierrez did not know her "very well." (*Id.* ¶ 11; Defs.' 56.1 Stmt. ¶ 11). Gutierrez testified that Chen did not hire or fire him, (Defs.' 56.1 Stmt. ¶ 12; Gutierrez Dep. at 29:9–10), and that Chen did not determine his rate of compensation. (*Id.* at 29:11–13; Defs.' 56.1 Stmt. ¶ 13). The record is also devoid of evidence that Chen supervised or controlled Gutierrez's schedule, or that she maintained his employment records. (*See* Cortes Dep. at 50:2–8 ("Q. How would [Chen] supervise the workers? . . . A. No. She would come and just say hello and then they would go and speak among each other about what was needed.")).

*Second*, with respect Cortes, the record is the same. Cortes testified that he began working at Skyview in 2017 and ended his employment in 2022. (*Id.* at 20:24–21:9). He testified that he regularly saw Chen at the car wash around two or three times a week in 2017, but beginning in 2018, he saw her less often: he only saw her at the car wash in 2020 and 2021 every few months, and not at all in 2022. (*Id.* at 43:7–18, 48:19–49:16). When Chen was at the car wash, she would greet Cortes, sometimes congratulate him or say, "good job." (Defs.' 56.1 Stmt. ¶ 18; Pls.' 56.1 Stmt. ¶ 18). There is no record evidence to suggest that Chen kept employment records on Cortes or determined his rate or method of compensation. (Defs.' 56.1 Stmt. ¶¶ 16–17; Cortes Dep. at 49:17–18,

---

Aug. 14, 2023 ("Pls.' Opp'n"), Dkt. No. 74 at 25). The Court need not resolve this dispute because the Court need not, and does not, rely on Chen's deposition or affidavit to grant summary judgment in her favor.

10

50:9–51:8). Cortes was not fired by Chen, nor was he hired by Chen—in his deposition, Cortes only speculated that Chen was consulted about his hiring, and such conclusory speculation is not evidence sufficient to survive summary judgment. (Cortes Dep. at 49:17–25); *see, e.g.*, *W. World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) ("The non-movant cannot escape summary judgment merely . . . through mere speculation or conjecture." (quotations omitted)). Cortes did testify that at the beginning of his employment, Chen "would go [to the car wash] with a lot of frequency and she would supervise the workers as well." (Cortes Dep. at 49:22–25; *see also* Pls.' 56.1 Stmt. ¶ 15). However, when asked to explain what he meant by this conclusion, he clarified that "[s]he would come and just say hello and then they would go and speak among each other about what was needed." (Cortes Dep. at 50:2–8). These types of interactions do not create a triable question of fact as to whether Chen was Cortes's employer. *See, e.g.*, *Copantitla*, 788 F. Supp. 2d at 310–11 (granting summary judgment in favor of an individual defendant owner who visited the place of employment once a week as a patron and made recommendations to the immediate employer); *Tapia v. Blch 3rd Ave. LLC*, No. 14-CV-8529, 2016 WL 4581341, at *8 (S.D.N.Y. Sept. 1, 2016) (holding that an individual who was involved in generally managing a restaurant, came to the restaurant daily, and gave instructions to staff was not an employer under FLSA because he did not hire or fire employees, set schedules or other conditions, or maintain employment records), *aff'd*, 906 F.3d 58, 62 (2d Cir. 2018); *see also, e.g.*, *Chen v. Lilis*

*200 W. 57th Corp.*, No. 19-CV-7654, 2023 WL 2388728, at *5 (S.D.N.Y. Mar. 7, 2023) (collecting similar cases).[10]

*Third*, with regard to Martinez, the record does not create a triable issue of fact that Chen was his employer. It is undisputed that Chen did not hire or fire Martinez. (Defs.' 56.1 Stmt. ¶ 20; Pls.' 56.1 Stmt. ¶ 20). Martinez further testified that Chen did not determine his rate of compensation, supervise him, determine his work schedule, or pay him. (Defs.' 56.1 Stmt. ¶¶ 21–22; Martinez Dep. at 32:7–15). There is also no evidence in the record to support that Chen kept Martinez's employment records. (*See* Martinez Dep. at 15:12–17). Martinez testified that Chen would come in "two to three times a week," but she "wouldn't get involved too much. . . . She would just go inside the office inside there and she wouldn't say anything." (*Id.* at 31:12–23). The record is devoid of essentially any interactions between Chen and Martinez that could give rise to a finding of an employer/employee relationship. *See, e.g.*, *Ramos v. Guaba Deli Grocery Corp.*, No. 20-CV-4904, 2021 WL 5563714, at *6 (S.D.N.Y. Nov. 29, 2021) (granting summary judgment for an individual defendant because he did not exercise any power over the Plaintiffs and "Plaintiffs do not contend that [defendant] ever supervised them"), *appeal dismissed sub nom. Ramos v. Rivera*, No. 22-CV-82, 2022

---

[10] Plaintiffs object to several of Defendants' Rule 56.1 facts regarding Chen's involvement at the car wash, disputing the facts in various places "to the extent that Plaintiffs' testimony establish, as stated above, that Moving Defendants made such employment-related decisions together, as a collective group." (Pls.' 56.1 Stmt. ¶¶ 12–13, 16–17, 20–22, 26). However, these conclusory objections are unsupported by the record evidence cited in the 56.1 statements or by the testimonies, which show that Chen was not acting as a supervisor, as detailed above. *See, e.g.*, *Copantitla*, 788 F. Supp. 2d at 310 ("Plaintiffs have not provided any evidence indicating that [individual defendant] takes any other role with respect to hiring or firing, or that her recommendations played a material role in any employee being hired or fired. The record is also devoid of evidence that [defendant] had any role in controlling work schedules, determining employee compensation, or maintaining employment records.").

12

WL 1564556, at *1 (2d Cir. Apr. 21, 2022); *Chen*, 2023 WL 2388728, at *6 ("It is not disputed that [the individual defendant] . . . had no ownership interest in the Restaurants, had no position or power at either Restaurant, and only visited the Restaurants a few times. Plaintiff falls woefully short of establishing any questions of fact regarding whether [the individual defendant] was an employer." (internal citation omitted)).

Accordingly, the Court grants Defendants' summary judgment motion seeking dismissal of Plaintiffs' claims against Chen.

II.  <u>Defendant Zhang</u>

The Court concludes that a genuine dispute of fact exists as to whether Zhang was Plaintiffs' employer, and thus, summary judgment is denied as to the claims against Zhang.

It is undisputed that Zhang would go to Skyview when Lou, her son, needed her to help clean up, and that she would help the car wash workers, including Plaintiffs, with drying and vacuuming cars. (Defs.' 56.1 Stmt. ¶¶ 29, 31, 36; Pls.' 56.1 Stmt. ¶¶ 29, 31, 36). Zhang testified that she works at Skyview car wash, performing a variety of services, including selling merchandise, mopping the floors, and overseeing the store when Lou was gone. (Zhang Dep. at 8:6–25, 39:3–14, 46:18–21; Zhang Decl. ¶¶ 10, 13; *see also* Pls.' 0 at 9–10).

This is where the factual record diverges. Zhang testified that she did not know the Plaintiffs and that she did not supervise any employees at the car wash. (Defs.' 56.1 Stmt. ¶ 32; Zhang Decl. ¶¶ 14–16, 19). She testified that the employees' schedules and compensation were "none of [her] business." (Zhang Decl. ¶ 20). However, Plaintiffs' accounts contradict Zhang's. For instance, Gutierrez testified that Zhang would "see

13

[them] through the cameras," and tell him and other employees to "do a good job," to "clean up the cars correctly," and to "drive them up correctly." (Gutierrez Dep. at 30:17–31:6). Gutierrez said that he was paid by Zhang "many times" and that she told him to work additional hours when required. (*Id.* at 31:7–32:8). He further testified that Zhang hired him and determined his rate of compensation. (*Id.* at 29:25–30:5).

Cortes's and Martinez's testimonies further support Zhang's involvement as their employer. Cortes stated that Lou and his mother, Zhang, interviewed him and hired him. (Cortes Dep. at 29:15–30:2). Cortes testified in depth on how Lou and Zhang talked to him, observed his work, and hired him. (*Id.*). Lou and Zhang also set his hours and told him his compensation when he began working full-time. (Pls.' 56.1 Stmt. ¶ 38; Cortes Dep. at 32:11–25). When Cortes requested a pay raise, both Zhang and Lou would respond: "[T]hey would talk among themselves, [Zhang] and [Lou], and then [Lou] would decide yes or no and they would let me know[.]" (Cortes Dep. at 55:2–8). Cortes identified both Lou and Zhang as his direct supervisors "because they are the ones that gave us our orders . . . [f]or example, when work was slow they would ask us to go and clean the machines or clean the stores and whatever they wanted us to do if the job was slow." (*Id.* at 53:4–13). Martinez similarly testified that Zhang supervised him and other employees by, for instance, telling them to "hurry up" if there were a lot of cars in line. (Martinez Dep. at 29:24–30:23).

It is true, as Defendants point out, that there is evidence on the record pointing to Zhang's non-employer status. (*See, e.g.*, Defs.' Mem. at 7–8; Defs.' Reply Mem. of Law in Further Supp. of Mot. for Summ. J., Dkt. No. 76 at 4–6). This evidence includes Martinez's testimony that Zhang did not hire him or determine his rate of compensation. (Martinez Dep. at 30:24–31:8). But, at best, that only undermines some

14

of the *Carter* factors: the first and second factors weigh in favor of a finding that Zhang was an employer, while the third and fourth factors are neutral.  Viewing the record in a light most favorable to the non-movant, a genuine issue of material fact exists as to whether Zhang was Martinez's employer.

Given the tension between the accounts of Plaintiffs and Zhang, there is no basis to conclude that her status as an employer is beyond material dispute.  Accordingly, the Court denies Zhang's motion as to all Plaintiffs.

## CONCLUSION

For the reasons described above, the Court grants the motion for summary judgment as to Linda Zhang Chen and denies the motion as to Ling Wei Zhang.  The remaining parties are directed to file their joint pre-trial order, consistent with the Court's Individual Rules and Practices, by June 26, 2024.

The Court also refers the parties to the Eastern District of New York's Mediation Program, to be completed by May 13, 2024.

SO ORDERED.

*/s/ Sanket J. Bulsara*  March 28, 2024
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York